UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

POP BAR, LLC,

                            Plaintiff,

v.

ANTHONY L. FELLOWS, and
HIP POPS, LLC, F/K/A CULTURED
INVESTMENTS LLC,

                            Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-19-13

12 Civ. 06647 (TPG)

OPINION

---

      Plaintiff, Pop Bar, LLC, brings this action against defendants, Hip-Pops, LLC, and its owner Anthony Fellows, alleging three counts, including false designation of origin and unfair competition pursuant to 15 U.S.C. § 1125(a); misappropriation of trade secrets; and breach of a confidential disclosure agreement.

      On November 12, 2012, defendants moved to dismiss the complaint, arguing that the court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and that plaintiff has failed to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). Alternatively, defendant has moved to transfer venue or dismissal for improper venue pursuant to 28 U.S.C. §1406 and 28 U.S.C. §1404(a).

      Defendants' motion to dismiss and request to transfer venue are denied in their entirety.

## BACKGROUND

The following facts are drawn from the complaint are assumed to be true for the purposes of resolving this motion.

Pop Bar ("Popbar") is a New York limited liability company in the business of design and sale of handcrafted and customizable Italian gelato, sorbet and frozen yogurt on a stick, through the use of uniquely designed equipment, processes, and product offerings known as the "Popbar System."

In addition to offering its variation of the Italian iced treat, Popbar also franchises the Popbar brand and mark to independent businesses, including those in New York and Florida, which are licensed to use trade names, service marks and trademarks owned by Pop Bar, and to operate under the Popbar System. The complaint alleges that plaintiff is the sole and exclusive owner of all proprietary rights and interests in the Popbar System and the "popbar" mark issued August 9, 2011, which is registered on the principal register of the United States Patent and Trademark Office (the "Popbar Mark").[1]

Popbar has used the Popbar name as a trade name and service mark in connection with the operation of its store in New York, New York, on its website, and in advertising, since May 3, 2010. The complaint alleges that plaintiff's mark is a valuable asset to the company, and a symbol of quality goods dispensed by Popbar. Moreover, plaintiff allegedly has an interest in protecting its mark and name to safeguard its goodwill and reputation.

---

[1] The Popbar registration is alleged to be in full force and effect under 15 U.S.C. §§ 1057(b) and 1115(a).

Defendant Anthony L. Fellows resides in Hollywood, Florida and is the owner of defendant Hip Pops, LLC f/k/a Cultured Investments LLC ("Hip Pops"), a Florida limited liability company.

On April 4, 2011, Fellows, through Hip Pops – then known as Cultured Investments LLC – allegedly submitted a Popbar franchising request to the company. Fellows was interested in taking Popbar's cool appeal to warmer climates and thus expressed interest in opening a Popbar franchise in Southern Florida. On April 7, 2011, defendants executed a confidential disclosure agreement with plaintiff. By its terms, defendants were to receive certain confidential information relating to a potential Popbar franchise; to not disclose any such confidential information; and to take all steps reasonably necessary to protect the secrecy of the confidential information.

On August 22, 2011, Daniel Yaghoubi, a Popbar founder, travelled from New York City to Miami, Florida to meet with Fellows in order to discuss defendants' interest in opening a Popbar franchise in Southern Florida. From September 8, 2011 through September 11, 2011, Fellows, in turn, travelled to New York City to meet with the principals of Popbar regarding his interest in a potential Popbar franchise in Southern Florida and to learn the workings of the Popbar System. During this visit, the parties entered into a confidential disclosure agreement whereby Popbar shared with defendants the Popbar System, including, Popbar's recipes and formulas, specially designed equipment, systems and methods of making customized Popbar products, and ideas for Popbar food trucks.

During the visit, defendants' learned about the Popbar System, including all aspects of the Popbar store. After Fellows' visit, defendants sent Popbar a Letter of Intent, which offered franchising terms that were a fraction of the typical Popbar franchising terms. Popbar rejected the proposal. The complaint alleges that the weak terms of the offer indicated to plaintiff that defendants never truly planned to open a Popbar franchise in Southern Florida. Defendants thereafter allegedly used the information gained while Fellows was in New York to open their own business in Southern Florida, namely, Hip Pop, LLC (a/k/a "HipPOP"). This action violated the parties' agreement.

In December of 2011, Popbar's Brazilian machinery manufacturer informed Popbar that Fellows had inquired about whether the manufacturer supplied Popbar's machinery. Defendants allegedly then purchased certain other machinery from this manufacturer, the same machinery defendants learned about when they visited New York.  In May of 2012, defendants launched their business, using the Hip Pop food truck to sell frozen Gelato on a stick in Southern Florida.

The complaint alleges that defendants did not have any intention to open a Popbar franchise in Southern Florida, and instead sought only to gain Popbar's valuable proprietary information to start a competing business. Defendants also allegedly used the knowledge about the Popbar System that they acquired to develop their business. For example, it is alleged that defendants copied Popbar's systems and methods of making customized Popbar artisanal treats. Moreover, using the same machinery as Popbar, defendants also allegedly offer handcrafted and customizable gelato, sorbet, and frozen yogurt on a stick to

customers. And, like Popbar, defendants also offer a unique three step process for creating customizable treats which is very similar to Popbar's. Defendants' treats are offered in many of the same flavors, and some use Pop Bar's product names, including "Hot Chocolate on a Stick" and "Frozen Hot Chocolate."

Defendants have allegedly been using HipPOP, a confusing similar imitation of the Popbar mark, on defendants' website (www.hippops.com) and also in the course of defendants' advertising. Furthermore, defendants' use of the mark and similar products allegedly confuses consumers into believing that a combination of the Hip Pop name, the HipPOP mark, and the products and operations used by defendants, are condoned or authorized by Popbar.

Plaintiff's first count arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count One alleges that defendants' use, offer, and sale of defendants' goods and services under HipPOP constitutes use of a false designation of origin and a false description that is likely to cause confusion among purchasers. The complaint further alleges that defendants' activities have taken Popbar's reputation out of its control so that any failure of defendants to maintain adequate standards will reflect adversely on Popbar. Popbar seeks to have the court enjoin the activity in order to avoid future harm to the mark and its associated goodwill.

Count Two alleges misappropriation of trade secrets. In support if this claim, the complaint alleges that Popbar has developed a unique concept for Popbar stores and products under the Popbar System, which includes confidential information and trade

secrets. Pursuant to the confidential disclosure agreement, defendants were allegedly given access to Popbar's confidential proprietary information and valid trade secrets, which it sought to diligently protect. It is alleged that defendants have used the trade secrets in connection with their business without the consent of Popbar and that they knew that their knowledge of the trade secrets had been acquired under circumstances which gave rise to a duty to maintain their secrecy. Popbar alleges that it is entitled to actual damages for losses caused by defendants' tortious acts and damages for unjust enrichment.

Finally, Count Three alleges breach of the confidential disclosure agreement. In support of this claim, plaintiff alleges that the agreement is a valid and binding contract; that defendants have breached the contract by improperly disclosing and using the confidential information received; and that this has caused Popbar to suffer damages in an amount exceeding $75,000.

## DISCUSSION

### I. PERSONAL JURISDICTION

Defendants first contend that this court lacks personal jurisdiction. In determining whether the court has personal jurisdiction, the court looks to New York law. Benson and Assocs., Inc. v. Orthopedic Network of New Jersey, No. 98 Civ. 1020(LMM), 1998 WL 388531, at *2 (S.D.N.Y. July 13, 1998) (citing Savin v. Ranier, 898 F.2d 304, 306 (2d Cir.1990) (citing Arrowsmith v. United Press Int'l, 320 F.2d 219, 222–25 (2d Cir.1963))).

New York's long-arm statute provides that a court may exercise personal jurisdiction over any "non-domiciliary ... who in person or through an agent: 1. transacts any business

within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state ...; or 3. commits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a) (McKinney 2008).

Here, the court centers its attention upon the "transacts business" prong. To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the "defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir.2007) (citation omitted). The overriding criterion necessary to establish a transaction of business is some act by which the "defendant purposefully avails itself of the privilege of conducting activities within New York." Licci, 673 F.3d at 61 (citation omitted).

As to § 302(a)(1)'s second requirement, "'a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" HSH Nordbank AG New York Branch v. Street, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (citing Licci, 673 F.3d at 66). A "single act within New York will, in the proper case, satisfy the requirements of section 302(a)(1)." Licci, 673 F.3d at 62 (citing Deutsche

Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 72, 818 N.Y.S.2d 164, 850 N.E.2d 1140 (2006))see also V Cars, LLC v. Israel Corp., 09 CIV. 8969 PGG, 2012 WL 4714816 (S.D.N.Y. Sept. 30, 2012).

In determining whether an out-of-state defendant has transacted business in New York, the Second Circuit has considered, *inter alia,* "whether the defendant has an on-going contractual relationship with a New York corporation, ... [and] whether the contract was negotiated or executed in New York, and whether after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship." Agency Rent A Car Sys. v. Grand Rent A Car Corp.*,* 98 F.3d 25, 29 (2d Cir.1996).

And finally, even where the court finds it appropriate to exercise long-arm jurisdiction under state law, the court must nonetheless ensure that the requirements of constitutional due process are satisfied. Indelible Media Corp. v. Meat & Potatoes, Inc., 12-CV-0978 GBD, 2012 WL 3893523 (S.D.N.Y. Sept. 7, 2012). To determine whether the exercise of personal jurisdiction comports with due process, the court must engage in a two part analysis: "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir.2010).

Under this analysis the court "must determine whether a defendant has certain minimum contacts with the forum to justify the court's exercise of personal jurisdiction." Id. If the Court determines that the requisite minimum contacts exist, the Court must then determine "whether the assertion of personal jurisdiction comports with 'traditional notions

of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." Id.

With respect to the initial minimum contacts inquiry, jurisdiction can be exercised under a general or specific theory. Chloe, 616 F.3d at 164. Under the specific theory, the cause of action is related to or arises out of the defendant's forum-related activities. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). For the exercise of specific jurisdiction, due process requires that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation resulted from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations omitted). "The defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." Id. at 474 (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Here, the complaint alleges that Fellows traveled to New York to learn about Popbar's business operations, equipment, recipes, and other critical elements that one might need to know in order to open a franchise under the Popbar mark. Not only is it alleged that Fellows physically came to New York to meet with Popbar's principals, Fellows also signed a confidential disclosure agreement whereby he agreed not to divulge or misappropriate the information that he learned from Popbar's principals. Moreover, Fellows allegedly sent a proposal to Popbar for purposes of opening a franchise, which Popbar took under

x

advisement and rejected. These activities amount to nothing less than purposeful conduct aimed at establishing a business enterprise under a contract, but which ultimately resulted in the use of the confidential Popbar information that Fellows obtained in New York. In short, the complaint alleges facts to support the conclusion that Fellows purposely availed himself of the privilege of conducting business in New York and thereby transacted businesses under CPLR §302(a)(1).

The court additionally finds that applying New York's long-arm statute to establish personal jurisdiction comports with principles of constitutional due process. That is, "traditional notions of fair play and substantial justice" are clearly satisfied where, as here, defendants should have expected their conduct to raise the specter of being haled into court in New York to answer for the alleged wrongs.

Therefore, the court finds that personal jurisdiction is established under New York's long arm statue.

## II.   THE MOTION TO DISMISS

Defendants next contend that, pursuant to Fed. R. Civ. P. 12(b)(6), plaintiff has failed to state causes of action in support of all counts.

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint that "plausibly give rise to an entitlement for relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678, 129 S.Ct. 1937. If the non-moving party has "not nudged its claims across the line from conceivable to plausible, its complaint must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. Iqbal, 556 U.S. at 678.

### A.    THE LANHAM ACT CLAIM

Subsection (A) of 15 U.S.C. § 1125(a)(1) prohibits any misrepresentation likely to cause confusion as to the source or the manufacturer of a product. Lipton v. Nature Co., 71 F.3d 464, 473 (2d Cir. 1995). Plaintiff alleges that the defendants engaged in the prohibited practice of "reverse passing off," which gives rise to the likelihood of confusion in this case. A successful claim for "reverse passing off" under the Lanham Act requires that the plaintiff prove (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin. Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 781-85 (2d Cir. 1994).

Here, the Popbar brand, unique production process, and product offerings originated with plaintiff. Plaintiff alleges that defendants attempted to sell their Gelato products by utilizing an alleged, albeit non-existent, affiliation with Popbar, in violation of the Lanham

Act. That is, a combination of the Hip Pop name, the HipPOP mark, and the products and operations used by defendants, tends to suggest that Popbar condones, authorizes, or affiliates with Hip Pop. The complaint alleges that Popbar was in the business of franchising its brand in Florida, defendants' place of business. Plaintiff has also alleged that defendants' use, offer, and sale of defendants' goods and services under HipPOP constitutes use of a false designation of origin and a false description that is likely to cause confusion among purchasers. And, clearly plaintiff has alleged harm as a result of the alleged infringement by averring that its goodwill and reputation have been affected by the alleged wrongs, defendants have been unjustly enriched, and that it is entitled to more than $75,000 in damages.

Therefore, because all elements of the "reverse passing off" test are met, plaintiff has established likelihood of confusion and a *prima facie* claim under Subsection (A) of 15 U.S.C. § 1125(a)(1).

### B.   BREACH OF THE CONFIDENTIAL DISCLOSURE AGREEMENT

Plaintiff's next claim is for breach of confidential disclosure agreement. Federal courts sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal procedural law. Gravatt v. City of New York, 54 F. Supp. 2d 233 (S.D.N.Y. 1999). Exercising supplemental jurisdiction over plaintiff's additional claims, the court applies New York law to determine whether plaintiff's remaining claims will survive defendant's motion to dismiss. 28 U.S.C. §1367.

Defendants first move to dismiss plaintiff's claim of breach of the confidential disclosure agreement brought under New York State law. The court addresses plaintiff's claim as one for breach of contract. R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 87 (S.D.N.Y. 2009).

In New York, the elements of a breach of contract claim are (1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach. Wharton v. Duke Realty, LLP, 467 F.Supp.2d 381, 393 (S.D.N.Y. 2006) (citing Marks v. New York Univ., 61 F.Supp.2d 81, 88 (S.D.N.Y. 1999)).

Here, plaintiff has alleged that defendant signed a binding confidential disclosure agreement, and that in exchange plaintiff provided confidential information regarding Popbar's operations. By allegedly misappropriating that information for its own commercial purposes, defendants allegedly breached that agreement. And, as mentioned above, plaintiff has alleged damage both to its goodwill and business reputation in excess of $75,000 dollars.

Therefore, the court finds that plaintiff has stated a valid breach of contract claim with respect to the confidential disclosure agreement.

**C.   MISAPPROPRIATION OF TRADE SECRETS**

Defendants next move to dismiss plaintiff's misappropriation of trade secrets claim. A party claiming misappropriation of trade secrets must prove that (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or

duty, or as a result of discovery by improper means. Integrated Cash Management Services, Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir.1990); Restatement of Torts § 757 (1939).

Popbar developed a unique concept for Popbar stores and products under the Popbar System, which allegedly included confidential information and trade secrets. Defendants were given access to Popbar's confidential proprietary information pursuant to the confidentiality agreement discussed above. These trade secrets allegedly derive independent economic to value to Popbar from the fact that they are not generally known to the public and were the subject of diligent efforts to preserve and maintain their secrecy. And finally, it is alleged that defendants have used the trade secrets in connection with their business without the consent of Popbar.

The court should find that these allegations, coupled with the allegations regarding defendants' alleged business development in Southern Florida, are sufficient to support a *prima facie* claim for misappropriation of trade secrets.

### III.  IMPROPER VENUE OR TRANSFER OF VENUE

In the alternative, defendants have moved to transfer venue or to dismiss for improper venue.

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties

have consented." Additionally, § 1406(a) provides that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Applying these rules, the court finds no basis for transferring this case or dismissing the action based upon improper venue. Defendants have not demonstrated any prospective difficulty in having witnesses testify in New York should this case proceed to trial. Nor, have they cited any truly prejudicial circumstances with respect to the parties themselves that would justify transferring the case to another district. On the contrary, the court finds that transferring this case would be antithetical to the idea of serving the interest of justice where, as here, a majority of the alleged wrongful conduct took place in New York.

Therefore, the court denies defendants' motion for dismissal based upon improper venue and motion to transfer of venue.

## CONCLUSION

Defendants' motion to dismiss based upon lack of personal jurisdiction; failure to state a cause of action; and improper venue is denied. Moreover, defendants' request to transfer venue is denied.

This opinion will resolve docket item number 9.

SO ORDERED.

Dated: New York, New York
August 19, 2013

Thomas P. Griesa, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-19-13